## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UNIVITA HOLDINGS LLC, et al.[1],<br><br>                Debtors. | Chapter 7<br><br>Case No. 15-11786 (MFW)<br>(Jointly Administered)<br><br>**Hearing Date: TBD – Expedited Hearing Requested**<br>**Objection Deadline: TBD – Shortened Notice**<br>**Requested** |

## MOTION OF DAVID W. CARICKHOFF, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 327, 328, AND 554 (I) AUTHORIZING THE RETENTION OF TIGER CAPITAL GROUP, LLC, AS AGENT, COUNSULTANT AND AUCTIONEER, (II) APPROVING RETENTION AGREEMENT, (III) LIMITING NOTICE AND ESTABLISHING NOTICING PROCEDURES AND (IV) GRANTING OTHER RELATED RELEIF

David W. Carickhoff, Chapter 7 Trustee (the "Trustee") of the estates of Univita Holdings, LLC and its related debtors (collectively, the "Debtors") by and through his undersigned proposed counsel and pursuant to sections 105(a), 327, 328, and 554 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6007, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) authorizing the retention of Tiger Capital Group, LLC ("Tiger"); (b) approving Retention Agreement, a copy of which is attached as **Exhibit 1** to the Proposed Order (the "Retention Agreement"); (c) limiting notice and establishing noticing procedures; and (d) granting other related relief.  In support of this Motion the Trustee relies

---

[1] The Debtors are the following entities: Univita Holdings LLC (15-11786), Univita Health Holdings Corp. (15-11787), Univita Health Inc. (15-11788), Univita Homecare Holdings LLC (15-11789), Univita Homecare Solutions LLC (15-11790), Univita of Florida, Inc. (15-11791), Univita Health Systems Holdings, LLC (15-11792), Univita Healthcare Solutions LLC (15-11793), Univita of Georgia LLC (15-11794); Univita of Tennessee, Inc. (12-11795); Univita Healthcare Solutions of Georgia, Inc. (15-11796); and All-Med Management Systems of New York Independent Practice Association, Incorporated (15-11797).

upon the Declaration of Jeffrey Tanenbaum,  a copy of which is attached hereto as **Exhibit B** and

incorporated herein by reference, and respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      Prior to the Petition Date, the Debtors were engaged in the business of providing,

among other services, services to the long-term care insurance industry, nursing case

management services, home healthcare management services, durable medical equipment

("DME") services, oxygen and respiratory therapy, drug and infusion therapy, in-home nursing,

administrative services to health plans, medical claim adjudication, and other medical and

medical-related services.

2.      In connection with its core business, the Debtors' assets include durable medical

equipment, furniture, fixtures, and equipment, intellectual property and rolling stock (the

"Assets")  located at thirteen (13) locations (the "Facilities") identified on **Exhibit A** to the

Retention Agreement, including without limitation those assets identified in the Asset Purchase

Agreement ("APA") between the Trustee and Integrated Home Care Investors, Inc. and other

assets owned pre-petition by the Debtors (the "Assets").  In connection with an orderly

liquidation of the  Assets and his administration of these estates (the "Estates"), the Trustee seeks

to maximize the value of the Assets.  As such, the Trustee has determined that it is appropriate

and in the best interests of the Estates to sell the Assets as soon as possible to preserve value and

maximize recoveries for all creditors.

3.      The Trustee has determined that it is necessary and in the best interest of the

Estates to retain Tiger as the sales agent, consultant and auctioneer to assist in the sales of the

Assets at one or more publicly marketed sales (the "Sale").  To that end, the Trustee has entered

into the Retention Agreement, which sets forth the terms on which Tiger would be employed, subject to Bankruptcy Court approval.

## JURISDICTION

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157 (b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are Sections 105(a), 327, 328, and 554 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6007, 9007 and 9019, and Local Rule 2002-1.

## BACKGROUND

7.      On August 28, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases").

8.      David W. Carickhoff has been appointed as chapter 7 trustee of the Debtors' estates.

9.      On September 23, 2015, the Court entered an Order for the Joint Administration of the Debtors' bankruptcy cases [Docket No. 27].

10.     The section 341(a) meeting of creditors was conducted on September 25, 2015.

## RELIEF REQUESTED

11.     By this Motion, the Trustee respectfully requests that the Court enter the Proposed Order (i) authorizing the retention of Tiger as Trustee's sales agent, consultant and auctioneer, (ii) approving the Retention Agreement between the Trustee and Tiger, (iii) limiting notice of certain pleadings and establishing notice procedures to be followed by the Trustee and other parties when filing certain pleadings with the Court and (iv) granting other related relief.

**A.      Qualifications of Tiger as Sales Agent, Consultant and Auctioneer**

12.     To market the Assets most effectively and to liquidate the Assets for the highest and best price, the Trustee hereby seeks to employ Tiger pursuant to the terms and conditions of the Retention Agreement.  As set forth below, based on Tiger's extensive knowledge and experience in conducting sales of similar assets, the Trustee has determined that Tiger is well qualified and uniquely situated to provide these services to the Estates.

13.     Tiger has substantial experience in liquidating property both in and out of bankruptcy, and it has been retained to conduct sales in bankruptcy cases in this district and other districts around the country.  *See, e.g., In re PennySaver USA Publishing, LLC, et al.*, No. 15-11198 (CSS) (Bankr. D. Del. July 30, 2015) [Docket No. 84]; *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Mar. 30, 2009) [Docket No. 2856]; *In re Linens Holding Co., et al.*, No. 08-10832 (CSS) (Bankr. D. Del. Oct. 16, 2008) [Docket No. 1861]; *In re Borders Group, Inc.*, No. 11-10614 (MG) (Bankr. S.D.N.Y. Feb. 18, 2011) [Docket No. 91]; *In re Fenwick Automotive Products, Ltd.*, No. 13-11500 (BLS)  (Bankr. D. Del. Aug. 22, 2013) [Docket No. 59]; *In re Big Island Carbon, LLC*, No. 12-13023 (BLS) (Bankr. D. Del. Feb. 27, 2014) [Docket No. 80].

14.     Based on Tiger's experience, the Trustee believes he is well positioned to get the highest price for the Assets and maximize recovery for creditors of these Estates.

**B.      Terms of the Retention Agreement**

15.     The Trustee has extensively negotiated the Retention Agreement with Tiger in order to arrive at the pertinent terms thereof.  The Retention Agreement provides, in pertinent part:

a.      Assets: The Assets consist of all durable medical equipment, furniture, fixtures and equipment, intellectual property and rolling stock of the Debtors estates (the "Estates") (collectively, the "Assets"), all of which are subject to the valid, perfected, enforceable and non-avoidable first priority security interests granted by the Debtors to the Lender Parties, as defined below, and located at the thirteen (13) respective locations identified on Exhibit "A" attached as Exhibit "A" to the Retention Agreement (each a "Location" and collectively the "Locations"), including without limitation those assets identified in the Asset Purchase Agreement ("APA") between the Trustee and Integrated Home Care Investors, Inc. (the "Buyer" and "Stalking Horse"). The Assets shall not include (i) vehicles; (ii) any funds in the Benefit Plan Account (as defined in the Stipulation By And Between David W. Carickhoff, Chapter 7 Trustee, Genstar Capital Partners V, L.P. As Administrative Agent For The Lenders, And UMR, Inc. Authorizing Funding Of Benefit Plan And Administration And Granting Stay Relief [D.I. 72] ) as of August 28, 2015 (the "Petition Date"); (iii) funds held in Debtors' SunTrust accounts as of the Petition Date; (iv) leases of real property, including the value thereof; and (v) any chapter 5 causes of action, including avoidance actions (collectively, the "Excluded Collateral").

b.      Bidding Deadline/Date and Time of Sale. Bid Submissions on the Assets shall close by 5:00 p.m. on November 9, 2015, New York time (the "Bid Deadline"). A 10% deposit shall be required from all prospective bidders together with their completed bid package by the Bid Deadline. Tiger and the Trustee will consult and the Trustee shall determine in on November 10, 2015 all qualified bidders, in consultation and coordination with the Lender Parties. Stalking Horse is a qualified bidder. The Sale shall be scheduled for November 11, 2015, to commence at 11 a.m. New York time (the "Sale Date" and "Sale Time"). Tiger shall use its best efforts to sell all Assets (including those which are not Acquired Assets as set forth in the APA) on the Sale Date. Tiger shall conclude the Sale in all events (except those beyond the control of the Trustee and Tiger) by midnight New York time on November 11, 2015.

c.      Manner of Sale: The Sale shall be conducted as follows

•      With respect to the Assets, Tiger will offer at open auction (via telephone auction or video auction) the Assets for sale as a whole (the "Entirety Sale"), subject to higher and better offers in accordance with the bid provisions. At the conclusion of the Entirety Sale, (or at such later point in the Sale process as the Trustee and Tiger determine, in consultation and coordination with the Lender Parties), the Trustee and his advisors shall determine, in consultation with Tiger and the Lender Parties, based on the highest and best offer on the Assets, the prevailing Entirety Sale bid (the "Winning Entirety Sale Bid"), if any; Tiger will offer the Assets for Sale by Lots ("Lots Sale"). At the conclusion of the Lots Sale (or at such other time as the Trustee and Tiger may determine, in consultation and coordination with the Lender Parties), the Trustee and his advisors, in consultation and coordination with Tiger and the Lender

Parties, shall determine, based on the highest and best offers on the Lots, the prevailing Lots Sale bids (the "Winning Lots Bids") and aggregate thereof (the "Total Winning Lots Sale Bids"); Tiger will offer the Acquired Assets for Sale ("Acquired Assets Sale") utilizing the Stalking Horse bid (the "Stalking Bid") as the opening bid, subject to higher and better offers in accordance with the bid provisions.  At the conclusion of the Acquired Assets Sale (or, at such other time as the Trustee and Tiger might determine, in consultation and coordination with the Lender Parties), the Trustee and his advisors shall determine, in consultation and coordination with Tiger and the Lender Parties, based on the highest and best offer on the Acquired Assets, the prevailing bid (the "Winning Acquired Assets Bid").  At the conclusion of the auctions of the Assets, the Trustee and his advisors, in consultation and coordination with Tiger and the Lender Parties, will determine the highest and best offer for the Assets and that bid (or aggregate of bids in the case of the Winning Lots Bids) shall be deemed the "Winning Higher Bid(s)"; and

- With respect to any Assets other than the Acquired Assets (including Acquired Assets sold by Lots), the Trustee and Tiger may elect to place those Assets for sale pursuant to a subsequent on-line auction if the Trustee, in consultation and coordination with Tiger and the Lender Parties, determine that the highest bid for a Lot of such Assets is insufficient and greater value might be realized from an on-line auction of those Assets.  Any on-line auction shall commence November, 13, 2015 and conclude by November 19, 2015.  Tiger will market the on-line auction concurrently with the telephonic auction.   Highest and best bids from the on-line auction will not require court approval.  Tiger and Trustee shall have the right, subject to consultation with the Lender Parties and any notice and any approvals which might be required, to revise the auction process prior to Sale by announcement thereof to all bidders.

- The terms and conditions of sale shall be consistent with the Notice of Sale, the APA as to the Acquired Assets, this Agreement and Tiger's "terms of sale" ("Auction Terms") to be distributed by Tiger (subject to Trustee approval as to form and content, in consultation and coordination with the Lender Parties) to all potential bidders at least five days in advance of the Sale Date.  Trustee hereby agrees that he will not effectuate any sale of the Assets on his own without utilizing the services of Tiger in connection therewith.  Tiger shall be authorized to accept, as the Trustee's agent, cash, cashiers' checks, guaranteed checks, Visa, MasterCard and American Express as payment for the Assets sold.  The Trustee hereby authorizes Tiger to execute, on the Trustee's behalf, all bills of sale, receipts and other documents (on forms approved by the Trustee and his advisors) necessary to transfer title to the Assets to any purchaser thereof upon payment of purchase price.  Tiger shall not be responsible for any purchaser that fails (through no fault of Tiger) to live up to its obligation to complete a purchase of any of the Assets or for any Assets that are not sold at the Auction.  Tiger is the sole and exclusive agent of the Trustee in

connection with the Sale and is hereby authorized to sell the Assets.   The Trustee agrees to promptly provide to Tiger all documents and information relative to contemplated sales or negotiations for sales of the Assets to Tiger.  Except as set forth in this Agreement or by Court order, and subject to his fiduciary duty to maximize value for the Debtors' Estates, the Trustee agrees not to remove any Assets from the Sale for any reason after execution of this Agreement.  The Acquired Assets shall not be sold for less than the Stalking Bid.  All other Assets may be subject to minimum bid requirements as established by Tiger and the Trustee.

- Tiger shall be solely responsible for preparing the Assets for sale, marketing and advertising the Assets for Sale, coordinating  access to and the display of Assets for Sale to prospective bidders prior to the Sale, providing prospective bidders with information relative to the Assets (which information has been approved by the Trustee), conducting the Sale, coordinating with successful bidders payment, collecting payment, remitting net payment to the Trustee and coordination of removal of all Assets from the Locations.

d.      Compensation: Tiger shall charge a buyer's premium ("Buyer's Premium") of fifteen percent (15%) on all Assets sold other than the Acquired Assets (whether those Acquired Assets are sold as a whole or in Lots). The Buyer's Premium will be added to each buyer's invoice and paid directly to Tiger by buyers.  The Buyer's Premium shall not be considered part of the sale proceeds or property of the Estates, but rather as part of the Compensation. Tiger shall also be entitled to retain as part of its Compensation ten percent (10%) of the gross proceeds from the Sale of all Assets except the Acquired Assets.  To be clear, only if the Acquired Assets (whether sold as a whole or in Lots) are sold for more than the Stalking Bid will Tiger be entitled to receive a ten percent 10% Commission on the amount which is the difference between the Stalking Bid and the Winning Higher Bid or Bids (in the case of aggregate Lots).  Tiger is guaranteed a minimum Compensation from the Gross Sale Proceeds (as defined below) of $40,000 plus its Sale Costs as defined below for conducting the Sale process.  All compensation to Tiger and expense reimbursements as set forth herein, other than the Buyer's Premium, shall be paid from the Gross Sale Proceeds.

e.      Sale Costs: Tiger shall also be entitled to reimbursement for all reasonable actual Sale related costs and expenses (hereinafter referred to as "Costs") incurred by Tiger in preparing for and conducting the Sale, including supervision, labor, marketing, supplies, relocation, storage and other Sale related costs, not to exceed $80,000.00. The following expenses have not been included in the Costs and are not deemed a responsibility of Tiger:   occupancy costs at the Locations, water, gas and electrical disconnect, personal property insurance, data backup, removal and/or destruction, the costs of leaving a broom swept facility.  Tiger shall be responsible for providing the Trustee and the Lender Parties a written report detailing the Costs, including receipts of all such Costs.

f.      Allocation of Sales Proceeds:  Tiger is authorized (subject to Court approval) to deduct Compensation and Costs collected from the gross proceeds of the Sale ("Gross Sale Proceeds") and deposit the remaining proceeds of the Sales (hereinafter referred to as "Net Proceeds") into Tiger's segregated trust account. Within ten (10) business days following the completion of Tiger's Sale related activities, Tiger shall (a) provide the Trustee and the Lender Parties with an accounting (which is reasonably detailed and acceptable to the Trustee, in consultation and coordination with the Lender Parties) of the  Gross Sale Proceeds, Costs and Net Income and (b) turnover the Net Proceeds to the Trustee as instructed.  All funds due to Tiger under the terms of this Agreement shall be paid to Tiger before any payment in satisfaction of any security interest, lien, or encumbrance against the Assets or the proceeds thereof.

g.      Taxes.  Tiger shall not have any liability for any claims made against Tiger for the payment of taxes related to the Assets, which claims if allowed by the Court shall be subject to payment in accordance with applicable bankruptcy and other law.  Notwithstanding the foregoing, buyers shall be responsible for the payment of any sales or other taxes due for the sale and transfer of the Asset purchased. Tiger will collect for such taxes directly from the Buyer and remit payment as and when due to the appropriate taxing authority.

h.      Removal of Sold/Unsold Assets: The rights and obligations of the Parties under this Agreement shall terminate upon the completion of the Sale of all the Assets by Tiger, the removal of the sold Assets following the Sale and/or the abandonment of such sold Assets by Buyers, and satisfaction of the Parties respective payment and other obligations to one another as set forth herein ("Termination Date"). Tiger will use its best efforts to complete all Sales and facilitate the removal of the Assets sold from the Locations by the buyers by November 30, 2015.  Any Assets which are not sold shall be removed as directed by the Trustee at the expense of the Estates or abandoned at the discretion of the Trustee.

## BASIS FOR RELIEF REQUESTED

## I.      Retention of Tiger as Trustee's Sales Agent, Consultant and Auctioneer Should Be Approved.

### A.      Tiger is Qualified and Disinterested.

16.      Section 327(a) of the Bankruptcy Code provides that a chapter 7 trustee may

employ an accountant, auctioneer or other professional to represent or assist the chapter 7 trustee

in carrying out the trustee's duties only if such accountant, auctioneer or professional is a

"disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the estate.

17.      The Trustee seeks to employ and retain Tiger pursuant to section 327 of the Bankruptcy Code based on its extensive knowledge and expertise in marketing and conducting sales of similar assets, as set forth in detail above.

18.      The Trustee further believes that Tiger has no disqualifying conflicts of interest. To the best of the Trustee's knowledge at this time, Tiger does not (i) hold an adversary interest in connection with the Debtors' cases; or (ii) represent any other entity having an adverse interest in connection with the Debtors' cases, except as disclosed in the declaration of Jeffrey Tanenbaum attached hereto as **Exhibit B** (the "Declaration").

19.      Thus, as set forth in the Declaration, and subject to the disclosures therein, Tiger is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, such that none of Tiger's officers, directors, managers, members, partners, and employees:

      (a)      Is a creditor, an equity security holder, or an insider of the Debtors;
      (b)      Is or was, within 2 years before the Petition Date, a director, officer, or employee of the Debtor; and
      (c)      Has an interest materially adverse to the interest of the estates or any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason.

Therefore, the Trustee believes that the retention of Tiger is in the best interest of the Trustee, the Estates and their creditors.

**B.      Retention under 328(a) of the Bankruptcy Code is Appropriate**

20.      Section 328(a) of the Bankruptcy Code empowers a chapter 7 trustee appointed under section 701 of the Bankruptcy Code to employ, subject to Court approval, professional persons to perform services for a chapter 7 trustee under any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, or on a contingent fee basis. See 11 U.S.C. § 328(a).

21.     The Trustee requests that Tiger be compensated in accordance with the terms of the Retention Agreement under section 328. The Trustee submits that, in his experience, this compensation arrangement is consistent with, and typical of, compensation arrangements of sales agents and auctioneers providing similar services to clients such as the Trustee, both in an out of chapter 7. The Trustee further submits that, in his experience, Tiger's proposed compensation is fair and reasonable and should be approved by the Court.

### C.     Waiver of Compliance with Information Requirements Relating to Compensation Requests in Local Rule 2016-2

22.     Pursuant to Local Bankruptcy Rule 2016-2(h), the Trustee seeks a waiver of Local Rule 2016-2's information requirements as the Retention Agreement provides for Tiger to be compensated pursuant to sections 5 and 6 thereof. Because Tiger's compensation is based upon percentage of the Asset Sales without regard to hours worked or services rendered, the Trustee submits that there is no need for Tiger to file fee applications. Furthermore, since Tiger's compensation will be calculated and paid based on fixed percentage fee, the Trustee submits that Tiger should not be required to maintain or file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. Based on the foregoing, the Trustee respectfully requests that the Court waive these requirements.

### II.     Approval of the Retention Agreement and Authorization to Abandon Unsold Property Pursuant to § 554(a)

23.     By this Motion, in addition to seeking the approval of Tiger's retention as a professional pursuant to sections 327 and 328 of the Bankruptcy Code, the Trustee seeks an order approving the Retention Agreement.

A. **Approval of the Retention Agreement**

24.    As set forth above, the Trustee has determined that Tiger has the requisite expertise and is uniquely qualified to provide services to the estates.  The Trustee has further determined, based on his experience, that the terms of the Retention Agreement are fair and reasonable.  In his business judgment, the proposal set forth by Tiger and reflected in the Retention Agreement is in the best interests of the creditors based upon Tiger's experience and expertise.

B. **Authorization to Abandon Unsold Property Pursuant to § 554(a)**

25.    Section 554(a) of the Bankruptcy Code provides that after notice and a hearing, the trustee "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  *See Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (a Trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim"); *In re Grossinger's Assoc.*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995).  *See also Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 507, n.9 (1986) ("[A] trustee [in bankruptcy] may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards…This exception to the abandonment power…is a narrow one."); *In re Bryson*, 53 B.R. 3, 4-5 (Bankr. M.D. Tenn. 1985) ("The effect of the abandonment is to remove the asset from the jurisdiction of the bankruptcy court.")

26.    As set forth in section 15 of the Retention Agreement, while Tiger will use its bests efforts to complete all sales and facilitate the removal of the Assets from the Locations by the buyers by November 30, 2015, to the extent that Tiger does not sell all of the Assets, the

Trustee requests authorization, in his discretion, to either remove at the expense of the Estates or abandon any such Assets.

27.     Notwithstanding the foregoing, the Trustee will utilize all commercially reasonably efforts to remove or cause to be removed any confidential or personal identifying information in any of the Debtors' equipment that is to be sold or abandoned.

### C.     Waiver of Bankruptcy Rule 6004(h)

28.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property…is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Trustee requests that the Proposed Order be made effective immediately upon entry by order of waiver of the 14-day stay under Bankruptcy Rule 6004(h).

29.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed.R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, Colliers suggests that the 14-day period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Lawrence P. King, Colliers on Bankruptcy, ¶ 6004.10 (16th ed. 2010).  Colliers further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

30.    The Trustee seeks to have Tiger commence its efforts upon entry of the Proposed Order.  Accordingly, the Trustee herby requests the Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

III.    **Limiting Notice and Establishing Noticing Procedures**

31.    The Trustee seeks to ensure that adequate notice of all pleadings is provided to true parties-in-interest, while simultaneously limiting the unnecessary cost and expense that would occur through providing notice of every matter filed in these Chapter 7 cases to each and every creditor and party-in-interest in these cases.

32.    There are over one thousand creditors, potential creditors and parties-in-interest involved in the Debtors' bankruptcy cases.  Each of these parties may be entitled to certain notices, including notice under Bankruptcy Rules 2002, 6004, 6007, 9007 and Rule 2002-1(b) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

33.    In particular, Bankruptcy Rule 2002(a) provides that as a general rule, "all creditors and indenture trustees" must receive notice of certain matters, including: (a) "a proposed use, sale or lease of property of the estate other than in the ordinary course of business" (Fed.R.Bankr.P. 2002(a)(2)); (b) "the hearing on approval of [a] compromise or settlement of a controversy" (Fed.R.Bankr.P. 2002(a)(31)); and (c) "hearings on all applications for compensation and reimbursement of expenses (Fed.R.Bankr.P. 2002(a)(6)).  Similarly, Bankruptcy Rule 6007 provides that the same broad notice be given of "a proposed abandonment of disposition or property" Fed.R.Bankr.P. 6007(a).

34.    Bankruptcy Rule 2002(i), however, authorizes a court to limit the amount of notice required by subdivisions (a)(2), (3) and (6) of Bankruptcy Rule 2002.[2]  Bankruptcy Rule 6007 similarly provides for notice of abandonment or disposition of property to be given to specified parties "as the court may direct."  Fed.R.Bankr.P. 6007(a).  In addition, Bankruptcy Rule 2002(m) specifically empowers a court to "enter orders designating the matter in which notices shall be sent except as otherwise provided by these rules."  Fed.R.Bankr.P. 2002(m). Bankruptcy Rule 9007 also provides that "[w]hen notice it to be given under [the Bankruptcy Rules], the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given."  Fed.R.Bankr.P. 9007.  Section 105(a) of the Bankruptcy Code authorizes a court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.  11 U.S.C. § 105(a).

35.    Pursuant to the above-referenced Bankruptcy Rules and Section 105(a) of the Bankruptcy Code, the Chapter 7 Trustee requests that the Court order that all notice for future pleadings that fall within the scope of Bankruptcy Rules 2002(a)(2), 2002(a)(3), 2002(a)(6), 6004, 6007 and 9007 be limited to the following parties:

(a)    The Office of the United States Trustee;

(b)    The Lender Parties;

(c)    All entities that <u>hereafter</u> file requests for special notice pursuant to Bankruptcy Rule 2002; and

(d)    All parties-in-interest specifically impacted by any such filing.

---

[2] Bankruptcy Rule 2002(i) provides, in relevant part: "a court may order that notices required by [these] subdivisions . . . be transmitted to the United States Trustee and mailed only to committees elected under 11 U.S.C. § 705 or appointed under § 1102 of the Code or to their authorized agents and creditors and equity security holders who serve on the trustee or debtor in possession and file a request that all notices be mailed to them."  Fed.R.Bankr.P. 2002(i).

36.     Given the large number of creditors, potential creditors and parties-in-interest in these Chapter 7 cases, and the concomitant expense associated with the broad noticing of each pleading described herein, the limitation on notice sought herein is reasonable, appropriate and in the best interest of the Debtors' estates and creditors.  Furthermore, to the extent that any creditor or party-in-interest desires to obtain notice of all matters filed with the Court, they need only file with the Court and serve upon the Chapter 7 Trustee an entry of appearance and request for service of notices pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

37.     No prior request for the relief sough in this Motion has been made to this Court or any other court.

## NOTICE

38.     Notice of this Motion and its accompanying exhibits will be served via email, facsimile, or overnight mail upon (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for Buyer; (iii) any entities known to have expressed in writing an interest in purchasing the assets during the past six (6) months; (iv) all entities known to have, or to have asserted, any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Assets which are to be sold pursuant to the Purchase Agreement; (v) the non-Debtor counterparties to any leases of nonresidential real property; (vi) all taxing authorities for those jurisdictions in which the Assets are located; (vii) the Internal Revenue Service; and (viii) all entities that filed a notice of appearance and request for service of papers in this case in accordance with Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order,

substantially in the form attached hereto as Exhibit A, granting the relief requested herein and

such other and further relief as the Court may deem just and proper.


Dated:  October 20, 2015                    By: /s/ Jennifer L. Dering            .
                                                 Jennifer L. Dering (#4918)
                                                 ARCHER & GREINER
                                                 A Professional Corporation
                                                 300 Delaware Avenue, Suite 1370
                                                 Wilmington, DE   19801
                                                 Telephone:  302-777-4350
                                                 Facsimile:  302-777-4352
                                                 Email:  jdering@archerlaw.com
                                                 Proposed Attorneys for Chapter 7 Trustee

113114901v2